IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03020-KAS

M.A.P.[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

      Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on the **Social Security Administrative Record** [#7], filed January 7, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#11] (the "Brief"), Defendant filed a Response [#16] in opposition, and Plaintiff filed a Reply [#17]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

_____

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#8]; *Reassignments* [#18, 19]; *Order of Reference* [#20].

1

## I. Background

On May 7, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II, alleging disability beginning November 1, 2018. Tr. 25.[3] His claim was initially denied on November 12, 2020, and again on reconsideration on November 15, 2021. *Id.* On April 27, 2022, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 41. On September 21, 2022, the Appeals Council denied review. Tr. 1.

The ALJ first determined that Plaintiff meets the insured status requirements of the Act through December 31, 2024, and that he has not engaged in substantial gainful activity ("SGA") since November 1, 2018, the alleged onset date. Tr. 27. The ALJ then found that Plaintiff suffers from four severe impairments: (1) degenerative disc disease of the lumbar spine; (2) migraines; (3) occipital neuralgia, status post nerve stimulator; and (4) adjustment disorder with depressed mood. Tr. 28. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.*

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[4] with the following exceptions:

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 7 through 7-8, by the sequential transcript numbers instead of the separate docket numbers. Also, citations to a brief's page numbers refer to the numbering used by the CM/ECF docketing system, rather than the document's original numbering.

[4] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability

> [C]an occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. He can sit for approximately 6 hours in an 8-hour day, and stand and walk for approximately 6 hours in an 8-hour day. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance as part of his job requirements. He can occasionally stoop, crouch, kneel, and crawl. He can have only occasional exposure to fumes, odors, and/or irritants. He should never work at unprotected heights or around moving and/or dangerous machinery. He can tolerate moderate levels of noise. He needs to avoid bright lights, that is lights in excess of retail or office-type lighting. He is limited to work that consists only of simple, routine, repetitive tasks. He can maintain concentration, persistence, and pace, for 2-hour segments in work with regular breaks, in work that consists of no more than simple, routine, repetitive tasks. In addition, he can have occasional contact with the public.

Tr. 31. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a production supervisor or warehouse supervisor. Tr. 39. The ALJ further found that Plaintiff was a "younger individual age 18-49" on the alleged disability onset date, and that he had "at least a high school education." Tr. 40. The ALJ noted that transferability of job skills was immaterial to his disability determination because, under the Medical-Vocational Rules, a finding of not disabled was supported regardless of whether Plaintiff had transferable job skills. *Id.* Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, and given the VE's testimony, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "Cleaner," "Routing Clerk/Mail Sorter," and "Price Marker." Tr. 40-41. The ALJ therefore found that Plaintiff was not disabled at step five. Tr. 41.

---

to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any

substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The

Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide [the reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**III. Analysis**

Plaintiff argues that the ALJ erred by (1) failing to include limitations from occipital neuralgia in his RFC; (2) failing "to address medical opinion[s] properly"; (3) in step five, providing three jobs which conflict with Plaintiff's RFC; and (4) not crediting as true Plaintiff's testimony. *Brief* [#11] at 10-17. The Court addresses each argument in turn.

## A.      Occipital Neuralgia and Episodic Muscle Spasms

Plaintiff argues that the ALJ failed to include limitations in his RFC determination that properly considered Plaintiff's occipital neuralgia—but he fails to support or develop this argument. *Brief* [#11] at 10-12. In fact, the ALJ expressly found that Plaintiff suffered from "severe impairments" which included "occipital neuralgia, status post nerve stimulator." Tr. 28. Moreover, the ALJ specifically relied on Plaintiff's history of occipital neuralgia to discount other medical opinions that proposed little or no functional limitations. *See, e.g.*, Tr. 37 (rejecting Dr. Pfeiffer's opinion that Plaintiff had no functional limitations; Dr. Fowler's finding of "no severe physical medically determinable impairments"; and Dr. Green's limitation to light work "with no non-exertional limitations" because of Plaintiff's history of migraines and occipital neuralgia).

Plaintiff seems to suggest that there is a clear and obvious causal link between his occipital neuralgia and episodic muscle spasms, but this is undermined in the very record he cites: "[Plaintiff's] muscles become 'rigid' lasting about 45 minutes . . . but it does not seem to be any correlation to when he is utilizing his occipital nerve stimulator." *Brief* [#11] at 11 (citing Tr. 357-60). The ALJ discussed Plaintiff's episodic muscle spasms at length but could find no evidence linking them to a medically determinable impairment:

> [T]he record does not establish a medically determinable impairment to account for these episodes, variously described as muscle spasms, myoclonic, or tonic-clonic jerking. The claimant has undergone significant evaluations and workups at various times . . . .

> Further, while Dr. Brueggeman's September 2021 letter was very supportive of the functional limitations caused by these episodes (described as chronic and debilitating); he also noted that the claimant's pain was "not consistent in any particular dermatomal pattern," that "it would be very difficult … to come up with an exact diagnosis," and that multiple providers including different emergency room and neurology providers, as well as Dr. Brueggeman himself, "seem to have no explanation" [Tr. 863].

Tr. 34-35.

A social security disability claimant must "present objective medical evidence that shows an impairment 'which could reasonably be expected to produce the pain or other symptoms alleged[.]'" *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987) (quoting 42 U.S.C. § 423(d)(5)(A)). In *Zagorianakos v. Colvin*, for example, the claimant alleged that she suffered from blackouts, i.e., "synocopal or near-synocopal episodes." *Zagorianakos*, 81 F. Supp. 3d 1036, 1041-42 (D. Colo. 2015). However, "no clear etiology ha[d] been established . . . which [was] clearly insufficient to establish the existence of a medically determinable impairment." *Id*. at 1042 (citing 20 C.F.R. § 404.1528(b))[5]. The court found no error in the ALJ's determination that these alleged impairments were not severe, because they were not even medically determinable. *Id*.

Here, the ALJ was faced with a similar situation: Plaintiff alleges that he suffers from episodic muscle spasms, but none of his treating providers have come up with an explanation—and not for lack of trying. Tr. 34-35. Without a medical finding that could reasonably be expected to cause Plaintiff's spasms, they present no "medically determinable impairment" for the ALJ to consider. *Zagorianakos*, 81 F. Supp. 3d at 1042;

---

[5] 20 C.F.R. § 404.1528 was removed and reserved in January 2017. *See* 82 Fed. Reg. 5844-01 at 5871, 2017 WL 168819 (Jan. 18, 2017)). However, the requirement of a medically determinable impairment is still found in Social Security regulations. *See* 20 C.F.R. § 404.1529(b) ("Need for [a] medically determinable impairment that could reasonably be expected to produce your symptoms").

*cf.* Tr. 34 ("[D]espite observation of an episode, thorough laboratory and diagnostic workup, and multiple specialist evaluations, the record does not establish a medically determinable impairment to account for the claimant's episodes. As such, the undersigned cannot consider them in assessing the claimant's ability to engage in substantial gainful activity.").

Plaintiff argues in his Reply [#17] that "occipital neuralgia commonly presents with tremors and spasms as identified in the medical record" but he fails to support this statement. *Reply* [#17] at 2.[6] He does not point to anywhere in the record where a treating medical provider linked his occipital neuralgia to his episodic muscle spasms. *Id.* The Court does not credit unsupported argument of counsel. The ALJ's statement about medically determinable impairments is accurate under current Social Security regulations. *See* 20 C.F.R. § 404.1529(b). Accordingly, the Court finds no error in the ALJ's discussion of Plaintiff's occipital neuralgia and episodic muscle spasms.

## B.    Treating Physician Opinions

Plaintiff briefly and vaguely argues that "the ALJ dismisses all of [Plaintiff's] doctors" and broadly asserts that "the record does not support the ALJ." *Brief* [#11] at 12. He lists the names of five treating providers and asserts that their opinions are "consistent," but he does not state what those opinions are or how he believes the ALJ

---

[6] In his Reply [#17], Plaintiff cites to a webpage URL but does not explain why the ALJ (or the Court) should accept his contextless excerpt of an unidentified article (written by authors with unknown expertise or reputation in their field). *Reply* [#17] at 3. The excerpt states that "[m]uscle hypertrophy, tensing, or spasm of musculature in the area has been postulated to contribute to compression." *Reply* [#17] at 3 (emphasis removed). Even if this statement is accurate, it specifically describes "spasms of musculature in the area" of "the occipital nerve itself"—but Plaintiff's spasms are not localized to his head. *Id.*; *cf.* Tr. 357-60 ("[Plaintiff] also describes episodes of his abdominal muscles spasming." If the causal link were truly as clear as Plaintiff suggests, surely at least one of his providers would have drawn that link.

"discredit[ed]" them or failed to account for them. *Id.* Defendant responds that this argument is so perfunctory that it presents nothing for the Court to consider on appeal. *Response* [#16] at 12. Plaintiff does not develop the argument any further in his Reply beyond vague statements like, "The ALJ cannot stand in for a medical expert" and "[p]ulling apart a disease is not supported by the Commissioner's rules." *See generally Reply* [#17], *id.* at 4.

The Court agrees with Defendant and finds that Plaintiff has failed to sufficiently frame and develop this issue for appellate review. *Murrell v. Shalala*, 43 F.3d 1388, 1391 n.2 (10th Cir. 1994) ("[W]hile there are a few scattered statements[,] . . . such perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review.") (collecting cases). Plaintiff's argument is so vague and broad (naming five providers) that the Court cannot determine what error he is asking the Court to review. After all, the ALJ discussed the opinions of some of these five named providers *at length*—especially Dr. Brueggeman. Tr. 36 (citing to multiple records from Dr. Purath and Dr. Brueggeman).

Plaintiff had an opportunity to clarify this argument in his Reply [#17] but chose not to. The Court cannot pinpoint Plaintiff's objections, and "[i]t is not [the Court's] role to shore up his argument for him." *Chrismon v. Colvin*, 531 F. App'x 893, 896-97 (10th Cir. 2013) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996)). Accordingly, the Court finds that Plaintiff has waived his argument that "the ALJ failed to address medical opinion[s] properly." *Brief* [#11] at 12.

**C.   Step Five Analysis**

Plaintiff next argues that the ALJ provided three jobs which directly conflicted with the determined RFC. *Brief* [#11] at 13-16. Regarding the job of cleaner, he asserts that the limitation on exposure to fumes is inconsistent with the job requirement of "six hours a day with cleaning supplies." *Id.* at 14. Regarding the job of routing clerk/mail sorter, he argues that "no job would allow more than three breaks, fifteen minutes in the morning and afternoon, and a half hour for lunch" but "the RFC includes two-hour limits." *Id.* at 15. Finally, she points out that the job of "DOT Code: 209.587-030 Map Clerk"[7] has a reasoning level of 3 but Plaintiff is limited to "simple, routine, repetitive tasks." *Id.* at 15-16.

The Court is not persuaded. "[A] vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data"—and even if the claimant asks for supporting data that the VE refuses to provide. *Biestek v. Berryhill*, 587 U.S. ----, 139 S. Ct. 1148, 1155-56 (2019); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (where the ALJ's RFC findings were "adequately reflected in the ALJ's hypothetical inquiries to the [VE] . . . the [VE]'s testimony provided a proper basis for adverse determination of this case"). Here, Plaintiff did not challenge or contradict the VE's testimony or qualifications in the moment. *See* Tr. 81-86. At the hearing, the VE testified that a person with Plaintiff's RFC, including "occasional exposure to fumes, odors, and/or irritants" could work as a "cleaner, 323.687-014." Tr. 84. As Defendant points out, Plaintiff fails to identify any conflict between the RFC limitation on exposure to

---

[7] The VE did not testify that "map clerk" was one of the jobs Plaintiff could perform—he said "price marker." Tr. 41. As Defendant notes, there appears to be a clerical error in the DOT number, which should be "209.587-03**4**" for marker, instead of "209.587-03**0**." *Response* [#16] at 18.

fumes, odors, and irritants and the proposed occupation of "cleaner," other than counsel's speculation. *Response* [#16] at 15-16.

The same is true of Plaintiff's argument that the routing clerk job would conflict with the RFC's two-hour limit on concentration. *Brief* [#11] at 15. The VE testified that a person with Plaintiff's RFC, including that "they can maintain concentration, persistence, and pace for two-hour segments in work with regular breaks in work that consists of no more than simple, routine, repetitive tasks," could work as "routing clerk/mail sorter . . . 222.687-022." Tr. 84-85. Again, Plaintiff did not challenge or contradict the testimony. Tr. 81-86. Defendant persuasively points out that a normal job, with two breaks and a half-hour lunch, can accommodate a two-hour limit on concentration. *Response* [#16] at 18.[8] In both cases, the VE's testimony was substantial evidence on which the ALJ could permissibly rely in reaching an adverse decision. *Gay*, 986 F.2d at 1341.

Finally, Plaintiff seizes on a clerical error which came from the VE's testimony but made it into the ALJ's decision: the VE testified that someone with Plaintiff's limitations could work as a "price marker, 209.587-030." Tr. 85. The DOT code is incorrect: Price Marker is actually found at 209.587-03**4**, while Map Clerk is found at 209.587-030. *See Marker*, Dictionary of Occupational Titles, 209.587-034, 1991 WL 671802 (Jan. 1, 2016). On its face, this is a clerical error rather than a substantive problem with the ALJ's decision. *See Response* [#16] at 18. Yet even if the Court were to discard "price marker" as a job Plaintiff could perform with his limitations, any such error is harmless because

---

[8] Purely by way of example, the following eight-hour workday with two breaks and half-hour lunch, would meet the RFC's two-hour concentration limit: Plaintiff could work from 9:00 a.m.-11:00 a.m., followed by a 15-minute break, then work from 11:15 a.m.-1:15 p.m., followed by a 30-minute lunch, then work from 1:45 p.m.-3:45 p.m., followed by a 15-minute break, then finally work from 4:00 p.m.-6:00 p.m.

there are still more than 350,000 jobs available nationally and more than 5,500 jobs available in Colorado. Tr. 40 (adding together "Cleaner" and "Routing Clerk/Mail Sorter"); *cf. Stokes v. Astrue*, 274 Fed. App'x 675, 684 (10th Cir. 2008) (concluding that no reasonable factfinder "could have determined that suitable jobs did not exist in significant numbers" in the claimant's region or several regions around the country where two of the four jobs considered by the ALJ had "11,000 jobs available regionally and 152,000 jobs available nationally."). Accordingly, the Court finds no reversible error in the ALJ's step five analysis.

**D.    Credit-As-True Doctrine**

Plaintiff argues that the Court must credit his testimony as true and award him benefits in lieu of remand, citing to Ninth Circuit caselaw setting forth the "credit-as-true" doctrine. *Brief* [#11] at 16-17 (citing *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988); *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014)). Defendant responds that the cited Ninth Circuit precedent is inapplicable here because the Tenth Circuit has explicitly not adopted the "credit-as-true" doctrine. *Response* [#16] at 19-20 (citing *Tammi F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *5 (D. Kan. Dec. 4, 2020); *Stewart v. Colvin*, 640 F. App'x 777, 779 n.1 (10th Cir. 2016)).

In *Stewart v. Colvin*, the Tenth Circuit noted that "[b]ecause our precedent is clear on this point, we reject [claimant's] invitation to apply the Ninth Circuit's 'credit-as-true' rule, which allows a court to credit evidence as true and remand for an immediate award of benefits when certain conditions . . . are met." *Stewart*, 640 F. App'x at 779 n.1. In Plaintiff's Reply [#17], he did not respond to Defendant's argument, distinguish *Stewart*,

or make a good faith argument for a change of law in this Circuit—he copy-pasted the *exact same paragraph* of argument from his Opening Brief [#11].[9]

The Court rejects Plaintiff's argument, as the "credit-as-true" doctrine is not the law in this Circuit. "As the Commissioner argues, the Tenth Circuit has explicitly declined to adopt [the credit-as-true] rule." *J.E. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 3910576, at *25 (citing *Stewart*, 640 F. App'x at 779 n.1 (10th Cir. 2016); 82 Fed. Reg. 5844-01 at 5858, 2017 WL 168819 (Jan. 18, 2017)). As the Social Security Administration has explained, "our intent in these rules is to make it clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion." *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5858. Accordingly, the Court declines to adopt the "credit-as-true" doctrine here.

Thus, for the foregoing reasons, the Court finds that the record contains substantial evidence from which the ALJ concluded that Plaintiff is not entitled to benefits under the Act during the time relevant to this case. The ALJ's decision was based upon substantial evidence and is free of reversible legal error.

### IV. Conclusion

Based on the foregoing,

---

[9] While the Court understands that counsel might cite out-of-circuit authority in an initial brief, especially if she is located in that circuit (here, Plaintiff's counsel is located in the Ninth Circuit, *see Brief* [#11] at 1)—but the Court expected that Defendant's response, supported by Tenth Circuit authority which explicitly declined to adopt the Ninth Circuit's "credit-as-true" doctrine, would have prompted Plaintiff to reflect, discuss the topic further, distinguish the case law, or perhaps even make a good faith public policy argument in his Reply [#17]. He did none of this. Moreover, one week before Plaintiff filed his Reply [#17], Magistrate Judge Hegarty had rejected the same argument made by the same counsel with the same copy-paste reply tactic. *J.E. v. Comm'r, Soc. Sec. Admin.*, No. 22-cv-01871-MEH, 2023 WL 3910576, at *25 (D. Colo. June 7, 2023) ("Plaintiff cites to non-binding case law and claims that under the 'credit-as-true doctrine,' the ALJ must provide 'specific, clear and convincing reasons for' rejecting . . . Plaintiff's testimony regarding the severity of her symptoms . . . Notably, Plaintiff copied and pasted this same argument in replying to the Commissioner's opposition."); *Reply* [#17] (filed June 14, 2023). The Court cautions counsel against copy-pasting arguments rather than addressing responses, especially after learning that she has misstated the law in this Circuit.

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: March 25, 2024                    BY THE COURT:


Kathryn A. Starnella
United States Magistrate Judge